**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

STEVE MCLEOD,

        Plaintiff,

        v.

FIFTH JUDICIAL DISTRICT OF
PENNSYLVANIA, *et al.*,

        Defendants.

Civil Action No. 20-1362 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on pro se Plaintiff Steve McLeod's ("McLeod") Third Amended Complaint. ("TAC," ECF No. 18.) Because Plaintiff was granted *in forma pauperis* status (ECF No. 17), the Court screens his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and *sua sponte* dismisses any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

**I.    BACKGROUND**

    This suit arises out of McLeod's disagreement with a series of state custody and child support proceedings. (*See generally* TAC.) McLeod identifies fifteen defendants in his TAC, each of whom allegedly played a part in the proffered miscarriage of justice and subsequent harassment of McLeod. (*Id.*) It should be noted at the outset that the Complaint is confusing, as it jumps

between timelines, states, and actors.[1] But, at a minimum, McLeod alleges his constitutional rights were violated and that he was harassed and defamed. (*Id.* at 1.) Notwithstanding the fact that the specifics of his story are vague and the connections between actors and the claims are speculative, the Court takes up the Complaint *sua sponte*.

## II. LEGAL STANDARD

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Conner v. Reed*, No. 21-14193, 2022 WL 138100, at *1 (D.N.J. Jan. 4, 2022) (quoting *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012)). In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),[2] a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff but need not accept as true legal conclusions couched as factual allegations. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do[,]'" and a complaint will not "suffice" if it provides only "'naked assertion[s]'

---

[1] The Court previously questioned whether venue was proper in this case. (Aug. 10, 2020 Order, ECF No. 12.) Even now venue remains a challenging question. *See Gattas v. City of Jersey City*, No. 07-4242, 2009 WL 5216973, at *3 (D.N.J. Dec. 29, 2009). That said, the Court notes that McLeod is pro se and chose to file in this District. Moreover, at least some of the events took place in New Jersey. As such, the Court finds venue is proper for the purposes of this *sua sponte* screening.

[2] Hereafter, references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 550 U.S. at 557).

### III.   DISCUSSION

In determining the sufficiency of a pro se complaint, the Court must construe the pleadings liberally and in the plaintiff's favor. *See, e.g.*, *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Capogrosso v. The Sup. Ct. of N.J.*, 588 F.3d 180, 184 n.1 (3d Cir. 2009) ("[W]e remain mindful of our obligation to construe a pro se litigant's pleadings liberally."). That said, while pro se pleadings are to be broadly construed, pro se litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

The Court therefore looks to the causes of action McLeod pled as well as the factual narrative he paints to assign any additional causes of action that McLeod presumably sought to plead. While true that a complaint's "failure to differentiate between defendants can warrant dismissal in and of itself," the Court attempts to extract from McLeod's six-page narrative any and all potential causes of action he may touch upon in his Complaint. *Turner v. N.J. State Police*, No. 08-5163, 2017 WL 1190917, at *10 n.22 (D.N.J. Mar. 29, 2017). Particularly so because this is McLeod's third attempt to plead some cause of action. And in construing the Complaint liberally,

3

from what the Court can glean from McLeod's allegations, he raises state law claims for harassment (N.J. Stat. Ann. § 2C:33-4), common law tort claims for defamation, and federal claims under 18 U.S.C. § 242 and 42 U.S.C. § 1983. The Court starts with McLeod's improper group pleadings as to some named defendants and then marches through the Complaint's factual allegations, grouping together similar claims and events.

A.     **Improper Group Pleading**

First, several Defendants are named but not mentioned throughout any of the Complaint's factual allegations. (*See generally* TAC.) As such, the Complaint does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Group pleadings are insufficient to sustain a claim as a matter of law. *Pushkin v. Nussbaum*, No. 12-324, 2017 WL 1591863, at *7 (D.N.J. Apr. 28, 2017) ("[G]roup pleading is impermissible because it fails to put each [d]efendant on notice of their specific actions which render them liable to [p]laintiff."). More specifically, courts in this district consistently hold that group pleading does not satisfy the plausibility requirement of Rule 8. *See, e.g., Dante v. Schwartz*, No. 20-01047, 2022 WL 1104996, at *3 (D.N.J. Apr. 13, 2022) ("Group pleading fails to meet the plausibility requirement"); *Frazier v. Kuhn*, No. 22-2781, 2022 WL 2235884, at *7 (D.N.J. June 22, 2022) (pleading that all defendants committed a single violation does "not satisfy the plausibility standard"). Pleadings that fail to identify each defendant's role for the alleged wrong are insufficient. *Pushkin*, 2017 WL 1591863, at *7. In any event, the Court considers the factual narrative in the Complaint.

B.     **Allegations of Unfairness and Harassment During Family Law Proceedings**

First up, the Court examines the allegations levied against the Fifth Judicial District of Pennsylvania, certain identified judges, and a judicial law clerk for one of those judges. (TAC 1-5.) Regardless of McLeod's opinion of the judicial system and how he thinks the involved judges

4

handled his case, it is an established principle of law that judges are generally "immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991). Indeed, judicial immunity encompasses a broad scope of actions by judges, including actions taken in error, "done maliciously, or . . . in excess of [their] authority[.]" *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). That said, there are two narrow exceptions to judicial immunity. *Mireles*, 502 U.S. at 11. "First, a judge is not immune from liability for non-judicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Id.* "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12.

Here, it is obvious no exception to judicial immunity applies. McLeod pleads the following: (1) his rights were generally "violated" and that he is a Black man (TAC 1); (2) a judge informed him that the judge may hold him in contempt (*id.*); (3) McLeod lost custody of his child during a judicial proceeding in March 2019 and subsequently lost visitation rights (*id.* at 1-2); (4) one of the judges that McLeod appeared before called the police to report that McLeod was harassing the judge and the judge's daughter (*id.* at 1); (5) some of the judges that McLeod appeared before were friends with other judges on social media (*id.* at 2); (6) the judge that McLeod appeared before reversed his ruling supposedly after being informed that Jamaica has laws against gay individuals (*id.* at 3);[3] (7) McLeod lost several motions in family court (*id.* at 4); (8) judicial officers refused to "provide evidence" to McLeod and misstated the record, therefore "abus[ing] [their] power" (*id.* at 3-4); (9) a judicial law clerk imposed a filing fee on McLeod for filing a motion (*id.* at 4); (10) McLeod's child support is too high (*id.* at 5); and (11) general grievances that the judicial system prays on minorities (*id.*).

---

[3] McLeod explains that he was born in Jamaica (TAC 1) and therefore the judge, on hearing about Jamaica's discriminatory laws, took out his frustration on McLeod (TAC 3).

On these facts, all judicial actors and court staff are entitled to absolute judicial immunity. The Court groups these clumps of allegations into several buckets. First, many of McLeod's complaints sound in perceived unfairness during his family court proceeding and perceived bias by judicial officers. But, as noted above, to overcome the strong presumption of judicial immunity, McLeod must plead facts that suggest the judicial officers acted outside the scope of their duties or exceeded their jurisdiction. *Mireles*, 502 U.S. at 11-12. McLeod does neither of those things. To be sure, he complains in this federal suit about how the state court handled evidence, motions, and statements made in court. Decisions on those matters clearly fall within a judicial capacity. As such, absolute immunity applies.[4] Accordingly, McLeod's claims regarding judicial actions taken by the judicial defendants are barred under the doctrine of judicial immunity and, therefore, are dismissed. *See Clauso v. Solomon*, No. 14-5280, 2017 WL 1528712, at *6 (D.N.J. Apr. 27, 2017) (dismissing claims against judges with prejudice because the judges were entitled to absolute judicial immunity).

The next bucket contains factual allegations that suggest judicial officers and their agents harassed McLeod during the pendency of his family law matters.[5] The Complaint details two separate events that fall into this grouping—a call by a judge to the police over a believed threat

---

[4] Although McLeod fails to plead any facts (versus conclusions) that support his theory of judicial error, judges are immune from liability "even if [their] exercise of authority is flawed by the commission of grave procedural errors." *Stump*, 435 U.S. at 359. It is settled law that a litigant's mere disagreement with a judge's decisions or actions "does not justify depriving that judge of [their] immunity." *Id.* at 363.

[5] McLeod mentions in passing that his former pro bono counsel for his family court proceedings threatened to "lock [him] up" during their initial meeting. (TAC 5.) This falls short of pleading any claim against that pro bono counsel, as this grievance does not provide the words spoken, the date or location of the alleged interaction, or any facts to substantiate a claim for harassment or anything else redressable by legal proceedings. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (finding that "bald assertions" or "legal conclusions" need not be credited in a complaint).

to that judge's family and the imposition of court filing fees by judicial staff. (*See* TAC 2-4.) Starting with the former, the Court cannot identify a cause of action that arises from an individual calling the police after feeling harassed, without more. *See Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 446 (E.D.N.Y. 2012) ("Merely providing information to law enforcement, even if that information is false or mistaken, does not render the supplier of information a state actor."); *Bloom v. Town of New Windsor Police Dep't*, 234 F.3d 1261 (2d Cir. 2000) (finding that a private individual's call to police to report a potential crime was not actionable under § 1983). Next, court employees imposing a filing fee is simply not harassment. (TAC 2-4.) Not only do "[c]ourt clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process," but enforcing a filing fee is a far cry from harassment. *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987); *Akins v. Deptford Twp.*, 813 F. Supp. 1098, 1102-03 (D.N.J. 1993), *aff'd*, 995 F.2d 215 (3d Cir. 1993).

As such, any action against the judicial employees on these facts fail to state a claim or are barred by absolute judicial immunity.[6]

### C. Claims that Police Officers Harassed McLeod

McLeod alleges that members of the Allegheny County Sherriff's Office and Brick Township Police Department harassed him. (TAC 1.) These claims also fail to state a claim under Rule 8(a). Law enforcement acting on a tip or allegation that a crime was committed does not substantiate harassment claims against the police without more. *See United States v. Perkins*, 363

---

[6] McLeod also alleges in cursory fashion that the law clerk "harassed" him in an elevator on one occasion and mentions (but does not describe) a "note" McLeod received from this law clerk. (TAC 3.) Such generalized, undescriptive allegations fall woefully short of pleading harassment. *See* N.J. Stat. Ann. § 2C:33-4.

F.3d 317, 326 (4th Cir. 2004) (holding that where an officer is able to verify the reliability of a tip, the dangers of harassment are greatly minimized); *Ballou v. Com. of Mass.*, 403 F.2d 982, 986 (1st Cir. 1968) (holding that in acting on tips "there is always the necessity of relying to some extent on the good faith of law enforcement officials"). As such, there is no basis for a claim of harassment on these facts.

Second, McLeod alleges that in January 2019, police disrespected him when they arrived at his house to question him and called him an "asshole" after McLeod refused to give his name. (TAC 2.) McLeod also alleges racial discrimination because he claims to have overheard a police officer mutter that it was "shocking" that McLeod had no active warrants. As an initial note, law enforcement's questioning of McLeod after receiving a complaint of harassment is not a constitutional violation. *See Levys v. Shamlin*, 808 F. App'x 97, 102-04 (3d Cir. 2020) (finding that police officers responding to 911 call was not a constitutional violation). What's more, the alleged name calling is not a constitutional violation either, or the basis for any other valid claim. *Robison v. Hovis*, No. 19-2292, 2020 WL 1158125, at *5 n.5 (E.D. Mo. Mar. 10, 2020) ("Name calling is not a constitutional violation for purposes of an action pursuant to 42 U.S.C. § 1983."). Thus, these factual allegations fail to support any cause of action.

Finally, the Complaint presumably brings constitutional claims against the Brick Township Police Department for actions taken by its officers. (TAC 1-2.) But a municipal police department is not a proper defendant in a case under § 1983. *Geissler v. City of Atlantic City*, 198 F. Supp. 3d 389, 395 (D.N.J. 2016). Indeed, Courts in the Third Circuit "treat the municipality and its police department as a single entity for purposes of section 1983 liability." *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997). As such, the Complaint is construed as bringing claims against the Township of Brick, New Jersey, rather than the police department itself.

8

It is well-established that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 694 (1978); *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (recognizing that there is a "two-path track" to municipal liability under § 1983, either through municipal policy or custom); *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) ("Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.") (citation omitted). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was" in the complaint. *McTernan*, 564 F.3d at 658 (upholding district court's dismissal of claims because simply paraphrasing § 1983 was not sufficient to allege a *Monell* claim).

McLeod's Complaint fails to meet this standard. McLeod claims that the Police Department improperly spoke with his daughter, that they were "shocked" that he did not have any outstanding warrants, and that a police officer referred to him in a derogatory manner. (TAC 1-2.) All of these happened in one interaction. (*Id.*) Thus, there is no pleading that identifies the municipality's policy or custom. As such, the Complaint insufficiently pleads liability for constitutional violations against the Township.[7]

---

[7] In addition, under the New Jersey Tort Claims Act, a public entity is protected from liability for the intentional "acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:2-10; *Gurvey v. Township of Montclair New Jersey*, No. 19-17525, 2022 WL 970303, at *16 (D.N.J. Mar. 31, 2022). Therefore, the Township cannot be liable for alleged defamation—an intentional tort—or harassment, which requires willful misconduct. *See D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, No. 03-1026, 2007 WL 4554208, at *25-26 (D.N.J. Dec. 21, 2007).

### D.      Claims Against Family Services Personnel and Agencies

Finally, McLeod seemingly brings common law defamation claims (and perhaps harassment claims) against Margaret Prescott, her employer the Women's Center and Shelter of Greater Pittsburgh, Chester Beattie, Donald Jerich, and Carolyn Jones. McLeod essentially claims that these individuals and entities litigated against him in his child custody case, filed allegedly false complaints, and misstated the evidence in court proceedings. (TAC 2-6.) These claims fail for two reasons. First, they fail as a matter of law because the statements contested in the Complaint are based on legal proceedings and are therefore covered by absolute immunity. *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 400 (D.N.J. 2009). "Absolute immunity exists in respect of statements, even those defamatory and malicious, made in the course of proceedings before a court of justice, and having some relation thereto[.]" *Hawkins v. Harris*, 661 A.2d 284, 288 (N.J. 1995) (quoting *Fenning v. S.G. Holding Corp.*, 135 A.2d 346, 350 (N.J. Super. Ct. App. Div. 1957)). The absolute privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Id.* at 289. It is the understanding of the Court that McLeod's allegations of defamation concern false statements and communications made during a judicial proceeding by litigants and attorneys to achieve their logical aims. As such, the allegations against these lawyers and litigants are barred by absolute immunity. Moreover, any objections to the decisions, processes, methods, or rulings of the family court had to be raised during that litigation or must be appealed to the relevant court of appeals.

Second, as noted above, "New Jersey courts 'have long recognized the existence of a qualified privilege that confers immunity upon a public official for defamation uttered in relation to matters committed by law to [his or her] control or supervision . . . [t]hat immunity is lost only

10

if 'the defamation is made with actual malice' . . . ." *Gurvey*, 2022 WL 970303, at *15 (citations omitted). The Complaint pleads no facts that allow the Court to infer that the state defendants acted with actual malice. (*See* TAC.) The New Jersey Department of Children and Family Services therefore falls under this umbrella of protection based on McLeod's Complaint.

## IV. CONCLUSION

The Court dismisses the Third Amended Complaint. Because McLeod had three bites at the apple to adequately plead a claim, the Court dismisses his third attempt with prejudice. It will issue an order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE